01
02
03
04
05
06
07                  UNITED STATES DISTRICT COURT
                  WESTERN DISTRICT OF WASHINGTON
08                          AT SEATTLE

09  JODY BUCKNER,                    )    CASE NO. C04-1983-RSL
                                     )
10         Petitioner,               )
                                     )
11     v.                            )
                                     )    REPORT AND RECOMMENDATION
12  DOUG WADDINGTON,                 )
                                     )
13         Respondent.               )
    _____ )
14

15         Petitioner is proceeding *pro se* in this 28 U.S.C. § 2254 action.  He is currently in custody

16  at the Stafford Creek Corrections Center due to his 2001 conviction on two counts of delivery of

17  cocaine and one count of possession with intent to manufacture or deliver cocaine.  Petitioner

18  raises three grounds for relief.  (Dkt. 6.)  The petition is now ripe for consideration.  Respondent

19  filed an answer to the petition with relevant portions of the state court record, including trial

20  transcripts.  (Dkts. 9 & 10.)  Respondent argues that petitioner failed to properly exhaust his

21  claims and that all three of his claims lack merit.  (Dkt. 9.)  Petitioner filed a traverse to the

22  answer.  (Dkt. 14.)

23         The Court has considered the record relevant to the grounds raised in the petition,

24  including all hearing transcripts.  For the reasons discussed herein, it is recommended that the

25  petition be DENIED and this action dismissed.

26  / / /

REPORT AND RECOMMENDATION
PAGE -1

01                                I.  Factual Background

02          The Washington Court of Appeals, Division I, summarized the facts and procedural

03  posture of petitioner's case as follows:

04          In May 2000, Harry Davis entered into a deal with the Valley Narcotics
            Enforcement Team (VNET) to work off his drug dealing charges.  Davis told
05          Detective Robert Jones that he had information about a drug dealer named Jody
            Buckner.  At Detective Jones's request, Davis contacted Buckner.

06
07          On May 18, 2000, Buckner paged Davis and Davis called him back.  When
            Davis told Buckner that he wanted to meet him, Buckner asked how much Davis
            needed.  As per Detective Jones's instructions, Davis told Buckner that he wanted to
08          buy a half ounce of powder cocaine.  Buckner quoted a price of $340.  He named a
            meeting spot and told Davis that he would be driving a gray Mercury Cougar.

09
10          Detective Jones gave Davis prerecorded buy money and drove him to the
            meeting spot, where they saw the gray Mercury Cougar.  Davis got into the car with
            Buckner and came back with a bag of cocaine.  Police followed Buckner's car to
11          10041 63 rd Avenue South in Seattle.  The house was leased by Buckner's ex-wife,
            Debra Avery.  Parked outside of the house was a red Honda Prelude registered to
12          Buckner and Avery.  The gray Mercury Cougar was registered to Buckner's mother.

13          On May 23, 2000, Detective Jones contacted Davis and asked him to arrange
            another drug purchase with Buckner.  Detective Jones set up a three-way call between
14          Davis and Buckner, wherein Buckner identified himself as "Jody."   Davis told
            Buckner that he wanted to buy another half ounce of cocaine, and Buckner again
15          quoted a price of $340.  They set up a meeting spot, and Buckner told Davis that he
            would be driving a red Honda Prelude.

16
17          While Detective Jones strip searched Davis, gave him buy money, and drove
            him to the meeting location, another detective was conducting surveillance outside
            Avery's house.  He watched Buckner enter the red Honda Prelude and drive to the
18          prearranged meeting spot.  Detective Jones saw Davis get into Buckner's car and
            observed a hand-to-hand exchange between the two.  Davis returned to Detective
19          Jones's car and handed him two bags of rock cocaine.

20          Based on these facts, Detective Jones obtained a search warrant for Avery's
            house.  On May 25, 2000, officers executed the warrant and arrested Buckner.  They
21          found two bags containing 8.1 grams of crack cocaine in his pocket.  When Buckner
            was asked if there were any drugs in the house, he directed the officers to 6.5 grams
22          of powder cocaine he had stored in the kitchen cupboard.  The officers seized a
            measuring cup containing cocaine residue and scales.  Buckner told the officers there
23          was a gun in the top drawer in the bedroom and a gun in the bedroom closet.  The
            officers also found numerous items of men's clothing, mail addressed to Buckner, and
24          Buckner's birth certificate in the house.

25          At trial, Buckner claimed that he was not the person who had sold cocaine to
            Davis.  He testified that a man named Dwight Summers used his name as an alias, and
26          that he and Summers looked very similar.  Buckner also claimed that Summers was
            a cocaine dealer, and that he believed that Summers was staying with Avery in May

2000.  He admitted to being in possession of the drugs found on his person, but claimed they were for personal use.

A jury convicted Buckner as charged.  The trial court imposed a standard range sentence including community placement of 12 months, or the entire period of earned release, whichever is longer.

(Dkt. 10, Ex. 3, at 2-4.)

When petitioner appealed his conviction to the Washington Court of Appeals, he was represented by counsel and raised the following assignments of error:

1.    The trial court's erroneous evidentiary rulings denied appellant his right to present a defense.

2.    The court's erroneous and inconsistent rulings created at least the appearance of bias and denied appellant a fair trial.

3.    Prosecutorial misconduct in closing argument denied appellant a fair trial.

4.    The court's failure to specify the period of appellant's community placement requires remand.

(Dkt. 10, Ex. 2, at 1.)  The Court of Appeals affirmed petitioner's conviction and sentence in an unpublished decision.  (Dkt. 10, Ex. 3.); *see also State v. Buckner*, 2003 WL 1748389 (Wn. App. Mar. 31, 2003).

Proceeding *pro se*, petitioner sought review in the Washington Supreme Court.  (Dkt. 10, Ex. 4.)  He raised the following grounds for relief:

1.    The trial court's erroneous evidentiary rulings denied appellant right [t]o present a defense;

2.    The court's erroneous and inconsistent rulings created at least the [a]ppearance of bias, and denied appellant a fair trial;

3.    Prosecutorial misconduct in closing argument denied appellant a fair trial;

4.    The court failure to impose the DOSA Program as directed by Judge;

5.    Incompetence Defense Attorney Phil Mahoney;

6.    Attorney Client Relationship violated;

7.    Judge Haley incompetence under the Cannons Index that cover judgeships [l]ending his office to be impartial;

REPORT AND RECOMMENDATION
PAGE -3

8.      Perjury by law enforcement officers whom at will lied on the witness [s]tand.

9.      Professional witness to establish large or small quantities of drugs is [y]et to be established.

10.     Malicious prosecution by prosecutor whom influence judge's decision to [b]e bias;

11.     State failed to show cause why appellant did not qualified for the DOSSA.

12.     State failed to show a twenty year friend relationship between informant [a]nd appellant.

(Dkt. 10, Ex. 4.)  The state Supreme Court denied review on November 4, 2003.  (Dkt. 10, Ex. 5).

## II.  Claims for Relief

In his habeas petition in this Court, petitioner raises the following grounds for relief:

1.      The Trial Court erroneous exclusion of relevant evidence To Wit: denied Buckner his right to testify, denied him his right to constitutionally present a defense.

2.      The Court was either Biased or Created the Appearance of bias which deprived the petitioner of his right to a fair trial.

3.      The prosecutor committed misconduct during his closing arguments thus, denying him his right to a fair trial.

(Dkt. 6.)  Respondent asserts that petitioner failed to properly exhaust his claims and has now procedurally defaulted on his claims.  Respondent further argues that all of petitioner's claims lack merit.  The Court will address respondent's exhaustion and procedural bar argument first.

## III.  Exhaustion of State Remedies

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(1)(A).  To exhaust state remedies, a petitioner must present each of his claims to the state's highest court. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  A petitioner must "alert the state courts to the fact that he was asserting a claim under the United States Constitution."  *Hiivala v. Wood*, 195

REPORT AND RECOMMENDATION
PAGE -4

01 F.3d 1098, 1106 (9th Cir. 1999) (citing *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995)). "The

02 mere similarity between a claim of state and federal error is insufficient to establish exhaustion."

03 *Id.* (citing *Duncan*, 513 U.S. at 366). "Moreover, general appeals to broad constitutional

04 principles, such as due process, equal protection, and the right to a fair trial, are insufficient to

05 establish exhaustion." *Id.* (citing *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996)).

06      In this case, respondent does not dispute that petitioner adequately presented the claims

07 raised in this petition as federal constitutional violations in his briefing before the Washington

08 Court of Appeals.  (Dkt. 9, at 11.)  However, respondent maintains that petitioner "failed to

09 properly exhaust the claims by not presenting any of them as federal constitutional violations to

10 the Washington Supreme Court." *Id.*

11      The Court disagrees that petitioner failed to exhaust his claims with the Washington State

12 Supreme Court.  To be sure, the *pro se* petition for review and other materials that petitioner filed

13 with the state supreme court were rather difficult to comprehend and were not well-organized.

14 (Dkt. 4.)  However, petitioner did provide the state supreme court with relevant portions of the

15 brief that he had filed with the state court of appeals.  *Id.*  That brief presented his claims as federal

16 constitutional violations.

17      In *Insyxiengmay v. Morgan*, ___ F.3d ____, 2005 WL 712483 (9th Cir. Mar. 30, 2005),

18 the Ninth Circuit recently considered arguments similar to those raised by respondent in this case.

19 In *Insyxiengmay*, the petitioner did not explicitly raise federal constitutional claims in the body of

20 a motion for review that he filed with the state supreme court.  However, the petitioner in that

21 case presented his constitutional claims to the state supreme court in an appendix attached to his

22 motion.  The Ninth Circuit noted that the appendix "contained *inter alia*, [petitioner's] arguments

23 regarding the three claims that the state contends are not exhausted.  All three arguments

24 contained the requisite references to the pertinent provisions of the United States Constitution."

25 *Id.* at *9.  Therefore, the Ninth Circuit concluded that the petitioner had "clearly presented all

26 three claims as federal issues to the Washington Supreme Court."  *Id.*

REPORT AND RECOMMENDATION
PAGE -5

01   The Ninth Circuit further noted:

02 The State argues that, because Insyziengmay's discussion of the three claims does not
 appear in the body of the motion, Washington law prohibits their consideration.  It
03 asserts that Washington courts do not permit "incorporation" in motions, briefs, or
 petitions of material contained in the appendices to those documents.  All the cases
04 cited by the State in support of its argument involve briefs or other filings that raise
 issues by incorporation by reference of another document not before the appellate
05 court, generally trial memoranda.  *See, e.g.*, *State v. Kalakosky*, 852 P.2d 1064, 1072
 n.18 (Wash. 1993).  In other words, those cases prohibit incorporation of material
06 that has *not* been filed with the court itself.  *See id.* ("Only issues . . . argued to the
 appellate court are considered on appeal.").  Here, in the appendix filed in the state
07 supreme court along with his motion, Insyxiengmay presented extensive argument in
 support of all three claims as well as citations to the requisite authority and to relevant
08 parts of the record.  Accordingly, the claims were fairly and fully presented to the
 Washington Supreme Court.

09

10 *Id.*

11   Similarly, in this case petitioner presented the state supreme court with portions of the

12 brief that he had previously filed with the state court of appeals.  Those portions of the brief

13 contained citations to federal cases and constitutional provisions related to the three claims that

14 he raises in his habeas petition.  Under these circumstances, the Court finds that petitioner

15 adequately exhausted his claims in state court.

16        IV.  Merits of Petitioner's Claims

17   This Court's review of the merits of petitioner's claims is governed by 28 U.S.C. §

18 2254(d)(1).  Under that standard, the Court cannot grant a writ of habeas corpus unless a

19 petitioner demonstrates that he is in custody in violation of federal law and that the highest state

20 court decision rejecting his grounds was either "contrary to, or involved an unreasonable

21 application of, clearly established Federal law, as determined by the Supreme Court of the United

22 States."  28 U.S.C. § 2254(a) and (d)(1).  The Supreme Court holdings at the time of the state

23 court decision will provide the "definitive source of clearly established federal law."  *Van Tran v.*

24 *Lindsey*, 212 F.3d 1143, 1154 (9th Cir. 2000), *overruled in part on other grounds by Lockyer v.*

25 *Andrade*, 538 U.S. 63 (2003).

26   In his traverse, petitioner appears to suggest that the Washington Court of Appeals erred

01 because it did not discuss provisions of the federal constitution or cite United States Supreme

02 Court precedent in its decision.  However, the United States Supreme Court previously rejected

03 this argument in a an appeal from a decision by the Ninth Circuit:

04    [T]he Ninth Circuit observed that the state court "failed to cite . . . any federal law,
       much less the controlling Supreme Court precedents."  If this meant to suggest that

05    such citation was required, it was in error.  A state-court decision is "contrary to" our
       clearly established precedents if it "applies a rule that contradicts the governing law

06    set forth in our cases" or if it confronts a set of facts that are materially
       indistinguishable from a decision of this Court and nevertheless arrives at a result

07    different from our precedent."  Avoiding these pitfalls does not require citation of our
       cases – indeed, it does not even require *awareness* of our cases, so long as neither the

08    reasoning nor the result of the state-court decision contradicts them.

09 *Early v. Packer*, 537 U.S. 3, 8 (2002) (internal citations omitted) (emphasis in original).[1]  As such,

10 the Washington Court of Appeals was not required to analyze federal constitutional law or

11 Supreme Court precedent.  Petitioner still bears the burden of showing that the decision of the

12 Washington Court of Appeals is contrary to clearly established precedents of the United States

13 Supreme Court.

14                          A.  Constitutional Right to Present a Defense

15        Petitioner first argues that he was denied his constitutional right to present a defense when

16 the trial court prevented him from offering certain testimony.  This claim appears to relate only

17 to petitioner's conviction of possession with intent to manufacture or deliver cocaine.  The

18 Washington Court of Appeals found as follows on this issue:

19        With regards to the charge of possession with intent to deliver cocaine,
       Buckner admitted that he was in possession of cocaine.  But he claimed that he was

20    a cocaine addict, and that the cocaine was for his own personal use.  The defense
       called Buckner's chemical dependency counselor, Ed Mosshart, as a witness.  But

21    Mosshart testified that he was only treating Buckner for alcohol and marijuana
       dependency, not cocaine addiction.  He further testified that Buckner disclosed that

22    he had not used cocaine since the age of eighteen.

23        Buckner testified on his own behalf and claimed that he was a cocaine addict,
       and that during the time period of his arrest he would use cocaine on nearly a daily

24

25    ──────────────────
       [1] The Supreme Court's decision in *Early* reversed the Ninth Circuit's decision in *Packer*

26 *v. Hill*, 277 F.3d 1092 (9th Cir. 2002), a case that petitioner appears to rely upon in support of his
    argument that the Washington Court of Appeals erred because it did not cite federal law or
    Supreme Court precedent in its decision.  (Dkt. 14, at 5.)

REPORT AND RECOMMENDATION
PAGE -7

01   basis.  To rebut his treatment provider's testimony, Buckner's attorney asked him
02   whether his employer had told him anything about the effect cocaine use would have
     on his employment.  The State objected on the basis of relevance and hearsay.

03          In a discussion outside the presence of the jury, Buckner's attorney indicated
04   that Buckner would testify that his employer told him that he would be fired if he was
     using cocaine.  The State argued that the defense was using this statement to
05   rehabilitate its own witness, and that whether or not Buckner was an addict was not
     relevant.  The court ruled that this testimony was not relevant, and further that if the
06   statement were being offered for its truth, it would constitute hearsay.  Buckner's
     attorney countered that the statement was not being offered for its truth, but rather
07   for its effect on Buckner.  The court again ruled that the testimony was not relevant
     and sustained the State's objection.

08          Buckner argues that the trial court's ruling was in error because the testimony
09   was relevant, and did not constitute hearsay.  On appeal, the State agrees that the
     statements offered did not constitute hearsay, and concedes that the trial court erred
10   in excluding the testimony, but argues that the error was harmless.  The State does
     not address the relevance of the testimony.

11          The State's concession is not well taken.  The trial court did not rule that the
12   employer's statements were hearsay, but rather that the statements would be hearsay
     if offered for the truth of the matter asserted.  This was not error.

13          Nor did the trial court err in ruling that the testimony was not relevant.  A trial
14   court's evidentiary ruling regarding relevance will not be reversed absent a manifest
     abuse of discretion.  Evidence is relevant if it has a tendency "to make the existence
15   of any fact that is of consequence to the determination of the action more probable
     or less probable than it would be without the evidence."

16          Buckner argues that the testimony that he was a cocaine addict was relevant
17   in that it would tend to make it more likely that he possessed cocaine for personal use,
     rather than with the intent to deliver.  Arguably, testimony that Buckner was in
18   treatment for cocaine addiction could be seen as relevant, in that it would bolster his
     claim that he was addicted.  But Buckner was *not* being treated for cocaine addiction,
19   and had in fact told his treatment provider that he had not used cocaine in years.
     Buckner's explanation for why he did not seek treatment, and why he apparently lied
20   to his treatment provider was not relevant in that it would not have made any fact that
     was of consequence to the determination of the action more probable or less probable
21   than it would have been without the evidence.  The trial court therefore did not err
     in excluding the testimony as irrelevant.

22   (Dkt. 10, Ex. 3, at 3-6) (internal citations omitted) (emphasis in original).

23          Petitioner argues that the exclusion of his testimony that his employer told him that he

24   would be fired if he used cocaine deprived him of his constitutional right to testify and to present

25   a defense.  (Dkt. 6.)  In their pleadings, the parties invoke different standards to evaluate whether

26   the exclusion of this testimony violated petitioner's rights under clearly established federal law.

REPORT AND RECOMMENDATION
PAGE -8

01   Respondent argues that because petitioner is challenging an evidentiary ruling, this claim should

02   be evaluated under factors set forth in *Tinsley v. Borg*, 895 F.2d 520, 530 (9th Cir. 1990).  In his

03   traverse, petitioner disputes that *Tinsley* is applicable and relies primarily on the United States

04   Supreme Court's decision in *Rock v. Arkansas*, 483 U.S. 44 (1987), to support this claim.  Under

05   either analysis, however, petitioner's claim should be dismissed.

06        In *Rock v. Arkansas* , the Court noted the well-established rule that "a defendant in a

07   criminal case has the right to take the witness stand and to testify in his or her own defense."

08   *Rock*, 483 U.S. at 49.  However,   *Rock* does not establish a constitutional right for a criminal

09   defendant to present irrelevant testimony.  *See, e.g.*, *United States v. Moreno*, 102 F.3d 994, 999

10   (9th Cir. 1996) ("While the constitutional right to testify permits a defendant to choose whether

11   or not to testify, it does not authorize a defendant to present irrelevant testimony.")  Indeed, the

12   *Rock* Court noted that a criminal defendant's right to present even relevant testimony is "not

13   without limitation" and "'may in appropriate cases, bow to accommodate other legitimate interests

14   in the criminal trial process.'"  *Rock*, 483 U.S. at 55 (*citing Chambers v. Mississippi*, 410 U.S.

15   284, 295 (1973)).  Instead, the Court held that "restrictions of a defendant's right to testify may

16   not be arbitrary or disproportionate to the purposes they are designed to serve."  *Rock*, 483 U.S.

17   at 55-56.

18        Here, petitioner was not arbitrarily prevented from testifying that his employer had told

19   him that he would be fired if he used cocaine.  After petitioner sought to introduce such testimony,

20   the trial court held an extended colloquy with the parties outside the jury's presence and gave

21   petitioner's counsel an opportunity to explain the relevance of the testimony. (Dkt. 10, Ex. 14, at

22   89-95.)  The trial court also offered petitioner's counsel the opportunity to present case law to

23   support his argument.  (*Id.* at 93-94.)  Under these circumstances, petitioner was not arbitrarily

24   denied the right to present testimony on this point.  *See, e.g.*, *Williams v. Borg*, 139 F.3d 737, 740

25   (9th Cir. 1998) (noting that "'[a]rbitrary in this context means without a basis in reason or law").

26   In addition, the exclusion of this particular testimony on relevance grounds was not a

REPORT AND RECOMMENDATION
PAGE -9

01   disproportionate ruling. The exclusion of petitioner's testimony was narrow, and trial courts have

02   wide latitude to exclude evidence that is only marginally relevant. *Crane v. Kentucky*, 476 U.S.

03   683, 689 (1986). As such, the Washington Court of Appeals' decision is not contrary to clearly

04   established federal law as established by *Rock v. Arkansas*.

05        Even if the trial court's evidentiary ruling on this matter was incorrect, such an error does

06   not automatically provide a basis for habeas relief. "It is well settled that a state court's

07   evidentiary ruling, even if erroneous, is grounds for federal habeas relief only if it renders the state

08   proceedings so fundamentally unfair as to violate due process." *Spivey v. Rocha*, 194 F.3d 971,

09   977 (9th Cir. 1999); *see also Tinsley v. Borg*, 895 F.2d 520, 530 (9th Cir. 1990) (a "state court's

10   decision to exclude certain evidence must be so prejudicial as to jeopardize the defendant's due

11   process rights"). To determine whether the exclusion of evidence reaches constitutional

12   proportions, the Court considers five factors:

13        (1) the probative value of the excluded evidence on the central issue; (2) its reliability;
          (3) whether it is capable of evaluation by the trier of fact; (4) whether it is the sole
14        evidence on the issue or merely cumulative; and (5) whether it constitutes a major part
          of the attempted defense.
15

16   *Tinsley*, 895 F.2d at 530.

17        Here, the trier of fact would be capable of evaluating petitioner's testimony that his

18   employer would have fired him if he had been using cocaine. However, the remaining factors do

19   not weigh in favor of petitioner.

20        First, the excluded evidence was not of significant probative value to the central issue of

21   whether petitioner possessed cocaine with an intent to deliver or manufacture. At most, this

22   testimony may have provided a reason why petitioner had not reported his alleged cocaine use to

23   his chemical dependency counselor. In turn, this may have added support to petitioner's claim that

24   he was a cocaine addict at the time of his arrest, which in turn may have bolstered petitioner's

25   claim that the cocaine in his possession at the time of his arrest was for personal use. Under these

26   circumstances, the probative value of the excluded testimony was tenuous at best.

REPORT AND RECOMMENDATION
PAGE -10

01        In addition, the excluded evidence was not the sole evidence that petitioner presented to

02   defend against the charge of possession with intent to manufacture or deliver cocaine.  Petitioner

03   testified at trial that the cocaine found on his person at the time of his arrest was for personal use.

04   (Dkt. 10, Ex. 14, at 96.)   He also testified that he was using cocaine almost on a daily basis at the

05   time of his arrest.  (*Id.* at 88.)  He also testified that he was an addict.  (*Id.* at 115.)

06        Similarly, the excluded testimony cannot be regarded as a major part of petitioner's

07   defense.  The excluded testimony apparently related to one of the three charges against petitioner,

08   possession with intent to manufacture or deliver.  Petitioner sought to defend against this charge

09   by showing that he was a cocaine addict and that the two bags of cocaine found on his person at

10   the time of his arrest were for his personal use.  As noted above, petitioner testified regarding his

11   alleged addiction and his personal use of cocaine, and the probative value of the excluded

12   testimony was not great.

13        Furthermore, it does not appear that the reliability of this testimony would be strong.  It

14   appears that this testimony would have been a self-serving attempt by petitioner to explain why,

15   as the state court of appeals noted, he "apparently lied to his treatment provider" about his alleged

16   cocaine use.  (Dkt. 10, Ex. 3, at 6.)  Though not raised by respondent, the Court also notes that

17   petitioner's counsel represented to the trial court outside the presence of the jury that Mr.

18   Mosshart, petitioner's chemical dependency counselor, "would be testifying to treating Mr.

19   Buckner for his addiction to cocaine during this time frame."  (Dkt. 10, Ex. 14, at 54-55.)  Mr.

20   Mosshart then took the stand and repeatedly testified that he did <u>not</u> treat Mr. Buckner for cocaine

21   addiction.  *See,* e.g., *id.* at 66, 70, 76.  These circumstances may suggest that petitioner's excluded

22   testimony was developed in order to address unexpected testimony by Mr. Mosshart.

23        As such, petitioner has not demonstrated that the Washington Court of Appeals's decision

24   regarding the exclusion of this testimony was contrary to, or involved an unreasonable application

25   of, clearly established federal law, as determined by the Supreme Court of the United States.

26   Therefore, the Court recommends that habeas relief as to petitioner's first ground for relief be

REPORT AND RECOMMENDATION
PAGE -11

01  denied.

02  B.  Judicial Bias

03  In his second ground for relief, petitioner argues that he was deprived of his right to a fair

04  trial because the trial court was "either Biased or Created the Appearance of bias" against him.

05  (Dkt. 6).  The Washington Court of Appeals addressed this allegation as follows:

06  Buckner next argues that the trial court was either biased against him, or
    created the appearance of bias, and that he was therefore deprived of a fair trial.  This
07  claim is meritless.  There is a presumption against a finding of bias.  A party who
    alleges bias or prejudice must support the claim with evidence before the appearance
08  of fairness doctrine will be applied.  Buckner alleges that the court's ruling tended to
    favor the State.  But Buckner alleges no evidentiary errors, aside from the claim of
09  error that we rejected above.  And Buckner has presented no evidence of the trial
    judge in the proceedings or the parties that would establish that the judge was actually
10  or potentially biased.  Buckner's claim of bias fails for a want of evidence.

11  (Dkt. 10, Ex. 3, at 6-7) (internal citations omitted).

12  To determine whether petitioner is entitled to habeas relief on this claim, the relevant

13  inquiry is "whether the state trial judge's behavior rendered the trial so fundamentally unfair as to

14  violate federal due process under the United States Constitution." *Duckett v. Godinez*, 67 F.3d

15  734, 740 (9th Cir. 1995).  Here, petitioner has not offered sufficient evidence to support such a

16  finding.

17  Petitioner points to alleged errors by the trial court in evidentiary rulings and in overruling

18  petitioner's objections at trial.  However, these examples do not reveal judicial bias or the

19  appearance of judicial bias against him.  A reviewing court in a habeas case must "abide by the

20  general presumption that judges are unbiased and honest." *Ortiz v. Stewart*, 149 F.3d 923, 938

21  (1998); *see also Winthrow v. Larkin*, 421 U.S. 35, 47 (1975) (to succeed on judicial bias claim,

22  petitioner must "overcome a presumption of honesty and integrity in those serving as

23  adjudicators").  Moreover, "judicial rulings alone almost never constitute a valid basis" for finding

24  judicial bias.  *Liteky v. United States*, 510 U.S. 540, 555 (1994); *see also Poland v. Stewart*, 117

25  F.3d 1094, 1103 (9th Cir. 1997) (same).  In addition, this Court's review of the transcripts of the

26  trial court proceedings does not reveal evidence to support a finding of judicial bias or the

REPORT AND RECOMMENDATION
PAGE -12

01  appearance of bias.

02      As such, petitioner has not shown that the Washington Court of Appeals' adjudication of

03  his claim of judicial bias was contrary to, or an unreasonable application of, clearly established

04  federal law as stated by the United States Supreme Court.  Therefore, the Court recommends that

05  petitioner's second ground for relief be denied.

06                          C.  Prosecutorial Misconduct

07      Finally, petitioner argues that his right to a fair trial was denied due to alleged prosecutorial

08  misconduct.  The Washington Court of Appeals addressed this claim as follows:

09          Buckner next argues that the prosecutor improperly attempted to paint him
10      as a criminal type during closing argument, and that he was therefore deprived of a
        fair trial.  A prosecutor commits misconduct if his or her argument appeals to the
        jurors' passion and prejudice and invites them to decide the case on a basis other than
11      the evidence.  A defendant alleging prosecutorial misconduct bears the burden of
        showing both improper conduct and prejudicial effect.
12
13          One of the key issues in the trial was whether Buckner lived in the home in
        which cocaine, scales, and guns were found.  Buckner testified that he was employed
14      delivering liquor.  In closing argument, the prosecutor pointed out that there were
        maps designating Buckner's delivery routes in the house, and showed the jury a
        picture that showed what appeared to be part of his deliveries of alcohol.  Buckner
15      argues that this was misconduct because the prosecutor was implying that he had
        stolen from his job.  But the prosecutor made no such allegation.  Rather, he simply
16      drew a reasonable inference from the evidence, and argued that Buckner lived in the
        house because his belongings were in the house.  This was not misconduct.
17
            The prosecutor also argued that the fact that Buckner's name was not on the
18      lease was not dispositive as to the issue of whether Buckner lived in the house.  He
        pointed to the testimony that Buckner sometimes gave his mother cash, and that his
19      mother sometimes paid the rent on the house.  The prosecutor went on to argue that
        Buckner did this because he did not want his name associated with his "crack house"
20      and that this was akin to money laundering.

21          Buckner's attorney did not object to this line of argument, although Buckner
        himself said "watch out" to the prosecutor.  Contrary to Buckner's contention on
22      appeal, Buckner's remark to the prosecutor did not constitute an objection.  An
        objection must be specific enough to give the trial court the opportunity to correct the
23      alleged error and to give the opposing party the opportunity to respond.

24          Failure to object to an improper remark constitutes a waiver of error unless
        the remark is so "flagrant and ill-intentioned" that it causes an enduring and resulting
25      prejudice that could not have been neutralized by a curative instruction to the jury.
        Even assuming that the prosecutor's references to a crack house and money
26      laundering were arguably improper, the harm, if any, could easily have been cured by
        a timely and specific objection.  Buckner has waived this claim of error by failing to

REPORT AND RECOMMENDATION
PAGE -13

01    make such an objection at trial.

02         Moreover, viewed in context, it is clear that the prosecutor was not attempting
      to make Buckner out as a habitual criminal, but rather was merely trying to
03    demonstrate that Buckner lived in the house.  And given that Buckner admitted he
      was a cocaine addict, and his mother testified that he was convicted with intent to
04    deliver in 1988, Buckner has failed to show that the prosecutor's statements about
      money laundering and a crack house would have impacted the jury's verdict, even if
05    they did tend to paint him as a criminal.  Given the overwhelming evidence of
      Buckner's guilt, he has failed to demonstrate that he was prejudiced by the
06    prosecutor's isolated remarks, and his claim of prosecutorial misconduct fails.

07    (Dkt. 10, Ex. 3, at 7-9) (internal citations omitted).

08         Petitioner argues that the prosecutor's comments during closing argument constituted

09    "baseless accusations of additional uncharged crimes" and improperly "appealed to the jury's

10    passions and prejudices by painting petitioner as a criminal type."[2]  (Dkt. 6.)

11         In evaluating petitioner's claim of prosecutorial misconduct, "[t]he relevant question is

12    whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting

13    conviction a denial of due process.'"  *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (*quoting*

14    *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).  In addition, "the appropriate standard of

15    review for such a claim on writ of habeas corpus is 'the narrow one of due process, and not the

16    broad exercise of supervisory power.'"  *Darden*, 477 U.S. at 181 (*quoting Donnelly*, 416 U.S. at

17    642).

18         Here, the statements made by the prosecutor do not rise to the level of a due process

19    violation.  As the Washington Court of Appeals noted, a major issue in this case was whether

20    petitioner, who worked as a driver delivering alcohol, lived at a house where the police found

21    cocaine, scales, and guns.  In his closing argument, the prosecutor called the jury's attention to

22    pictures showing "what appears to be part of [petitioner's] deliveries from alcohol" at this house,

23

24    _____

25         [2] In his traverse, petitioner also asserts that the Washington Court of Appeals "failed to
      acknowledge the argument that the prosecutor also stated that the petitioner and his mom were
26    laundering money.  Nowhere in the decision did the court address this issue."  (Dkt. 14, at 13.)
      This argument is incorrect.  As set forth above, the Washington Court of Appeals explicitly
      discussed the "money laundering" statement by the prosecutor.

REPORT AND RECOMMENDATION
PAGE -14

01   along with maps from petitioner's delivery routes. (Dkt. 10, Ex. 15, at 91.) The prosecutor made

02   this statement in the context of arguing that petitioner lived at this house. Following an objection

03   by petitioner's counsel to the prosecutor's statement, the trial court stated that "[t]he jury will

04   consider what evidence supports any argument. You may proceed." *Id.* The trial court also

05   issued jury instructions stating that an attorney's remarks, statements and argument "are not

06   evidence" and directed the jury to "[d]isregard any remark, statement or argument that is not

07   supported by the evidence or the law as stated by the court." (Dkt. 10, Ex. 19, at 3.)

08        Petitioner argues that the prosecutor's comments implied that he had been stealing alcohol

09   from his employer. However, the prosecutor did not make such an express statement. At worst,

10   the prosecutor's statement was ambiguous, and was followed immediately by an instruction from

11   the trial court judge that the jury should "consider what evidence supports any argument." A

12   "singular, somewhat ambiguous comment does not constitute a miscarriage of justice or an affront

13   to the integrity of the judicial process." *United States v. Tarrazon*, 989 F.2d 1045, 1053 (9th Cir.

14   1993); *see also Ortiz-Sandoval v. Gomez*, 81 F.3d 891, 898 (9th Cir. 1996) ("arguments of counsel

15   are generally accorded less weight by the jury than the court's instructions and must be judged in

16   the context of the entire argument and the instructions").

17        Petitioner points to one other statement to support his claim of prosecutorial misconduct.

18   In closing argument, the prosecutor noted that petitioner's name was not on the lease for the

19   house where cocaine, scales, and guns were found by the police. The prosecutor argued as

20   follows:

21        Now, his name is not on the lease. Why is that? His name is not on the lease because
         the defendant doesn't want his name associated with his crack house. Why does his

22        mother pay that rent. We heard testimony about how the defendant gives his mother
         money in cash. He gives her money in cash, she in turn pays that rent. That is akin

23        to laundering money. It is a way for the defendant to avoid being connected with his
         crack house.

24

25   (Dkt. 10, Ex. 16, at 47-48.) Following this statement by the prosecutor, petitioner himself said

26   "watch out," but his counsel did not raise an objection. *Id.* at 48.

REPORT AND RECOMMENDATION
PAGE -15

01    Because petitioner's attorney did not object, respondent argues that any claim of
02 prosecutorial misconduct with respect to these remarks is procedurally barred.[3]   *Hall v. Whitley*,
03 935 F.2d 164, 165 (9th Cir. 1991); *see also Rich v. Calderon*, 187 F.3d 1064, 1070 (9th Cir. 1999)
04 (court may not review prosecutorial misconduct claims where petitioner failed to make
05 contemporaneous objections at trial and state court consequently invoked a procedural bar to their
06 consideration).   In its decision, the Washington Court of Appeals appeared to invoke a procedural
07 bar with respect to this claim, finding that "Buckner has waived this claim of error by failing to
08 make such an objection at trial."[4]   (Dkt. 10, Ex. 3, at 9.)   As a result, petitioner may be
09 procedurally barred from pursuing this claim in this proceeding.   *See, e.g.*, *Jackson v. Guirbino*,
10 364 F.3d 1002, 1006-07 (9th Cir. 2004) (habeas petitioner barred from pursuing claim of
11 prosecutorial misconduct where he failed to object to prosecutor's statement at trial and state
12 court deemed the claim to be waived).

13    Even if a procedural bar did not apply to the claim, it cannot be said that these remarks by
14 the prosecutor "so infected the trial with unfairness as to make the resulting conviction a denial
15 of due process."   *Donnelly*, 416 U.S. at 643.   "Improper argument does not, *per se*, violate a
16 defendant's constitutional rights."   *Jeffries v. Blodgett*, 5 F.3d 1180, 1191 (9th Cir. 1993).   While
17 the prosecutor's remarks regarding a "crack house" and "money laundering" were suggestive,
18 these isolated statements were not so prejudicial in context as to constitute a due process
19 violation.   *See, e.g.*, *Hall v. Whitley*, 935 F.2d 164, 166 (9th Cir. 1991) (dismissing prosecutorial

---

21    [3] In cases where a prosecutorial misconduct claim is procedurally barred, petitioner must
22 demonstrate cause and actual prejudice in order to obtain habeas relief.   *Hall v. Whitley*, 935 F.2d
23 164, 165 n.1 (9th Cir. 1991).   Here, petitioner has not shown that the prosecutor's remarks caused
actual prejudice to him.

24    [4] After finding that petitioner had waived this claim, the Washington Court of Appeals
25 nonetheless went on to discuss the merits of this claim, stating that "Buckner has failed to show
that the prosecutor's statements about money laundering and a crack house would have impacted
26 the jury's verdict, even if they did tend to paint him as a criminal."   *Id.*   However, the Ninth Circuit
has indicated that the "fact that the court went on to discuss the lack of merit of some or all of the
. . . claims does not eliminate the procedural bar."   *Poland v. Stewart*, 169 F.3d 573, 586 n.8.

REPORT AND RECOMMENDATION
PAGE -16

01  misconduct claim where remarks were "isolated moments in a three day trial").

02      Therefore, the Court recommends that petitioner's third ground for relief be denied.

03  Petitioner has not met his burden of showing that the decision of the Washington Court of Appeals

04  regarding this claim is contrary to, or an unreasonable application of, clearly established federal

05  law as determined by the United States Supreme Court.

06                              V.  Conclusion

07      In light of the foregoing, it is recommended that petitioner's habeas petition be denied and

08  this action dismissed.    A proposed Order of Dismissal accompanies this Report and

09  Recommendation.

10      DATED this  11th  day of April, 2004.

11

12                          Mary Alice Theiler
                            U.S. Magistrate Judge

13

REPORT AND RECOMMENDATION
PAGE -17